1541 Metropolitan Area Transit v. VA. Mr. Lucas. May it please the Court and Council, good morning. My name is William Lucas and I represent Metropolitan Area Transit, Incorporated, the appellate in this case from Minneapolis, Minnesota. This is a contract case, the claim of Metropolitan Area Transit, Inc. is based on a written contract. You may assume that we've at least tried to digest the briefs and understand the issues and come right to the most compelling argument you've brought us. I will, Your Honor. The case is based on a written contract but particularly on two provisions which are simple, clear, and unambiguous. One says, however, it starts out with the however, which is a powerful word. It's meant to give that provision some degree of preference over others. It means no matter what or in spite of other things in the contract. It says however, all handicapped transportation requests will be offered the contractor. That's one clear, unambiguous provision of the contract. Another one is the provision that states what the purpose of the arrangement is. And it's to provide transportation of the handicapped primarily by wheelchair. Okay, so he says that necessarily means that it's not exclusively by wheelchair. Absolutely, Your Honor. So let's suppose you're right that the contract is clear and unambiguous on the face of it. As I understand it, there's a conflict in the courts as to whether, if the contract is unambiguous, you can nonetheless look at the course of performance to interpret it. With the Uniform Commercial Code and the restatement taking the position that even if it's unambiguous, you can still look to the course of performance. I'm not sure that we've ever addressed which line of authority to follow. What's the correct rule? Why isn't the restatement correct that even if the contract is unambiguous on its face, you can still look to the course of performance? Well, I think in this case, it would be important to look at what the performance of the parties was to see if it indicates some different understanding or different meaning of the contract. Yeah, but you're not really answering my question. My question is, assume you're right, it's unambiguous on the face. Can we look to the course of performance to interpret it nonetheless? I'm not sure. I guess what I'm saying is, if the court decides that it cannot, we're certainly fine with that. If the court determines that maybe it should, that the course of performance in this case doesn't indicate any change in understanding of the parties, so it doesn't provide any new information upon which this court can make its decision. And the reason for that is that what happened in this case is that the parties entered into the contract in which the department called upon the contractor each time that it wanted the contractor to provide service, and the contractor provided the service. As far as the transportation service needs of the department that were not offered to the contractor, the contractor was never advised of those, so it never acquiesced or questioned, or there was just no communication that would indicate any different understanding between the parties about what the meaning of the contract was. So it just doesn't give the court any reason to try to reinterpret the contract as meaning something different from the unambiguous terms. Just thinking again and pursuing this line of reasoning, the fact that your contractor's not equipped with litter beds, for instance, and that it seemed to be undisputed that during the performance of the contract they were not standing by such that they could transport people who needed that sort of transportation, isn't this evidence significant, even though – and let's accept for the purpose of this discussion that if you just look at the words of the contract, they say all handicapped transportation. I think the real question is, since this is a contract with the government, should we, should the courts, be more rigorous in holding the government, the author of the contract, to the explicit words that they wrote, despite a course of performance that suggests that their current position now has some merit? Your Honor, the fact that the appellant did not own its own litter beds does not mean that it could not have performed the service. The testimony in the record by the owner of the company said that it could have subcontracted, either by paying through an arrangement with another service provider or by swapping services because it obviously, given the fact that it had excess wheelchair vans, it could have traded service so there'd be no additional cost. There's nothing in the record to dispute the fact that metropolitan area transit could have provided the service. The only testimony on that point is that they could. Similarly with handicapped patients that could be transferred by means of taxi cab. They could also be transported by means of the equipment and drivers that metropolitan area transit had. So it is undisputed that metropolitan area transit could have provided those two additional kinds of handicapped transportation services. What about the fact that there was no complaint during the whole course of the first option period or the second option period about not getting the litter patients or the bulk of the taxi cab patients? Because there's nothing in the record to show that there was any knowledge that the department was offering that kind of transportation service to someone other than appellant. But you weren't getting any of the litter patients. If your client thought that the contract covered litter patients, they certainly must have noticed that they didn't get any litter patients. The client thought, knew that the VA was obtaining transportation services by means of litter patients, not during the term of the contract. It was only when we started asking in discovery what kind of handicapped transportation services did it provide that we got what is exhibited. How do I know that from the record? How do I know that from the record that they didn't know about these other forms of transportation? There's nothing in the record about it. But there's nothing in the record to suggest that there was an awareness on the part of metropolitan area transit that something was going on. It was just responding to costs. But if they didn't know anything was going on, why would they expect under the requirements contract to get something that they didn't know about? The whole theory here is that the client thought there were three kinds of transportation services, wheelchair, litter, and taxi cab, and that they were going to get all the business. That's part of the premise for your client's argument. What we do know is that there wasn't any complaint about not getting the other kinds of business, the litter or the taxi cab business. There's no opportunity to complain, Your Honor. There's nothing in the record that shows that the VA notified metropolitan area transit, by the way, we're hiring someone else to provide litter van transportation. By the way, we're having handicapped patients transported by means of taxi, but we're not offering it to you. There's nothing like that in the record. It was only after the action was commenced that we discovered that. So why would the court presume in favor of the government that, well, they must have known? I mean, you have to make that leap of faith. But there's nothing to support it.  Is your client not contending that the original contract, in its view, covered litter and taxi cab transportation? Isn't that part of the contention? Yes, it did. Yeah? So if they weren't getting any of them, why isn't that significant? Metropolitan area transit responds to calls. It doesn't monitor the VA to say, okay, what kind of transportation are you arranging for today? What kind of transportation are you arranging for? Metropolitan area transit responds to calls. That's all they did. So they didn't know what the department was doing. There was no way for them to know. Mr. Loops, to pick up, though, on the point I think that Judge Dyke made earlier, I mean, they were just getting van calls for wheelchair patients and so forth. And so, again, they saw that they weren't getting anything but that. So isn't it logical under those circumstances and doesn't common sense say that they would think, well, we're not getting anything else? I mean, they must have, I mean, anybody would realize there were other kinds of patients being serviced at the VA and at the satellite facility. I'm running out of time here, but if I may answer that question, the primary effort, the primary purpose of the contract was wheelchair transportation. That's what it says. It's not surprising to me, and I don't think it should be surprising to anyone, that when they got wheelchair transportation requests, they thought that that's what was going on with the contract, allowing for the possibility that there might be other, some kind of transportation need. But still, the contract was primarily for wheelchair transportation. That's what they got. I don't, if you look at the contract, it emphasizes the kind of equipment, drivers and everything. Definitely, it was a primary purpose of the contract. That was being fulfilled. I don't think they had any particular reason to say, well, maybe there was some other kind out there we should inquire or something. I don't think they should be required to do that. I think the VA should be required to tell them. We're arranging for other kinds of transportation. Let's hear from the VA. We'll pursue this line of questioning with counsel for the government. Thank you. I say we'll save you rebuttal time. Good morning, Your Honor. May it please the Court? Because taxi and litter van transportation was not part of MAT's requirements contract, the VA did not breach its contract. Then why does it say all? It doesn't say only wheelchair. It doesn't say only handicapped people of a certain type. Why does it say all if, in fact, the government didn't mean all when they negotiated? Or at least, why wasn't that a reasonable understanding of this contractor when it says all, that they meant all? Because the parties and the Court must interpret the contract looking at the contract as a whole. When you look at the contract as a whole, you look at the specifications that wheelchair vans, training for attendants. I don't see how the specification helps you. I mean, yes, it does mention wheelchairs, but there's nothing in the specification that suggests that it's wheelchair exclusive, is there? The fact that only the wheelchair specifications were in the contract and not specifications for other types of services is compelling evidence. Well, the wheelchair, but the specification's not limited to wheelchair. Is there any language in there that says it's only wheelchair? I didn't see any. No, Your Honor, but the language is referring to what are the requirements that the VA is going to require for wheelchair vans. For example, if litter vans had been contemplated as part of that contract, it's reasonable to assume that there would be requirements for what the VA wanted in a litter van, the safety requirements, the training. There's none of that evidence in the contract. So the fact that the only requirements or the specifications that the VA asked for were referring to wheelchair vans is evidence, strong evidence, that what the VA was asking for was wheelchair van services and not other types of transportation. So you agree that the specification wouldn't necessarily say anything special about the taxi cab patients, but your argument is that it would say something about the litter patients. Certainly that addresses the litter van issue. The taxi cab is... If the only forms of transportation were wheelchair and taxi cab, there's nothing in the specifications inconsistent with that, right? I'm sorry, Your Honor. If the only forms of transportation involved here were wheelchair and taxi cab, there's nothing in the specification that's inconsistent with covering both of those. Well, no, except that presumably the VA wouldn't have required wheelchair vans for someone who could be transported in a taxi, which would be a less expensive form of transportation. We also have to read the contract with the proviso that the VA and its medical staff were responsible for determining what mode of transportation each patient was entitled to. If a patient was ambulatory and could be transported in a taxi, then it would only be reimbursed for a taxi, not a wheelchair van. So the VA had the authority to determine what the mode of transportation was that each patient would be allowed to have. And so the fact that MAT could have provided taxi or services for ambulatory patients on a regular basis is not relevant to whether MAT was entitled to those services. Well, the solicitation said primarily wheelchair. You're telling us that it was exclusively wheelchair. Wasn't it reasonable for this contractor seeing primarily wheelchair to understand that other modes might be included? Well, in the testimony of the director of the patient family center and the contracting officer, those two people explained that sometimes, for example, out of state patients for whom a taxi would not travel out of state, they would send those patients to MAT. Or if a taxi was available, they would send those patients to MAT. But the contract says all. The solicitation says primarily wheelchair. The contract says all. And you're telling us something different, that it wasn't all and that it was exclusively wheelchair. Yes, Your Honor. And that comes from reading the context of the contracts. Certainly if you look at the course of performance, the prior dealings of the parties, and even the testimony of the president of MAT himself, who acknowledged that his contract was only for wheelchair services. So you're saying the contract should not be read in accordance with what it says. The contract read as a whole... Says all. Says all. But when you read it as a whole, with the specifications of what the wheelchair van were required to have... It doesn't say all except litters, except litter transportation. No, it doesn't. But again, if you look at... That's significant, is it not? Apparently that was significant, much less than wheelchair, but not insignificant, just looking at the amount of damages that's claimed. If you look at that one sentence, Your Honor, yes, that it says what it says, and as the board noted, it's not the model of clarity. But if you look again at the whole contract, it seems that wheelchair van services were the only services contemplated. No one disputes that the majority of the transportation of all that was covered and paid for by the VA was wheelchair transportation. Correct. That's not the issue. The issue is whether all means not really all, just most. Well, Your Honor, the question is whether handicapped means wheelchair or whether it means all other types of patients. Actually, the language kind of hurts you, because it says that the government reserves the right to solely determine how patients are to be transported. However, all handicapped transportation requests will be offered to the contractor. It makes it sound as though no matter what form of transportation the government selects, that the contractor is going to be offered all of them. So I think you've got a problem on the face of the contract. And if on the face of the contract there's an ambiguity, then we look to what the... language is clear. Can we still look to the course of performance? Yes. We look at the course of performance. We look at the prior contract that MAT had with the VA where only wheelchair van services were ever required. We look at the fact that the VA had contractors for taxis and for litter vans, and they were only procuring those services from those contractors. What is your strongest argument from a factual standpoint with respect to the course of conduct during the period of the contract? To what can you point us in the record that would support your contention that during the period of the contract, the conduct of the parties indicates their understanding of the contract consistent with yours? Well, the strongest facts are that the VA never asked for these services from MAT, and MAT never inquired, hey, I'm not getting any litter patients, that's unusual. I'm not getting any taxi patients, that's unusual. So you're saying your best point on conduct during the contract is the combination of those two factors you just mentioned? Yes, and the understanding from the president of MAT in his testimony that he understood the contract to be only for wheelchair van services. But we're told, do you disagree, that there's no evidence showing knowledge and acquiescence during the course of performance? Do I agree that there was no knowledge on the part of MAT? Well, I'm inquiring about the record, not your personal opinion. There is nothing in the record one way or the other. Certainly the absence of any inquiry or correspondence, particularly when the VA was going to exercise this option for the second year and asked MAT if he had any questions, and MAT had none. That's evidence that MAT believed that the contract was going along. Is it evidence they knew that litter transportation was being given elsewhere? I mean, if this the government says, don't interpret this contract according to its plain language, which says all, because everybody knew and acquiesced and didn't object, isn't that burden on the side that thinks the contract should be interpreted differently from its plain text? Yes, Your Honor, but again, I think there's evidence in the record that at some point if you're not receiving what you think is about two-thirds of what you thought were the services you were procuring, it seems that a reasonable contractor would inquire, and there's no evidence that MAT ever inquired as to those other services. In fact, even in their certified claim to the contractor, it was only their negligent estimate theory, which they've now abandoned. They never raised this issue until the fourth board. Well, isn't the burden on the government, this is what I'm trying to focus on, who wrote the contract, who wrote all, who issues a solicitation which says primarily wheelchair, doesn't say exclusively, and now the government's position is that we must interpret the contract contrary to all of that, and I'm just trying to figure out whether there isn't a burden to provide some evidence to support that theory. Understanding that the evidence could have been adduced just by asking, did you know or didn't you know? Instead, it's silent. Well, Your Honor, I suppose that the burden is on the party who is trying to interpret the contract in a way different than how the contract is written. Our position is that given the contract as a whole, its most reasonable interpretation is that it's for wheelchair patients. I think what Judge Newman is asking you is, was there any evidence in the record that the contractor knew that there were other forms of transportation, such as litter and taxi cab transportation? And we have one reference that you relied on where it says the government can choose the modes of transportation. I mean, was this a secret that there were some patients being transported by litter and some by taxi cab? What does the record show about that? There's nothing one way or the other in the record. I think a reasonable assumption is that this contractor is going to the VA on a daily, multiple trips daily, and seeing as a contractor that those types of transportation exist, then I don't think it's unreasonable to assume that they had to have known that there were these types of services, just from a reasonable person's standpoint. There's nothing in the record that says one way or the other that they had positive knowledge, actual knowledge, that there were these other types of services. But I think that's a reasonable inference that they had to have known, just based on being in the business. MAT also states that it could have subcontracted the litter van services out. Again, that's not consistent with what the terms of the contract were. If the contract wanted litter vans, there would have been specifications as to what the VA would have required for those services. And since there would have been no specifications, it's not reasonable to assume that MAT could have subcontracted those services out had they been offered. Does the contract bar subcontracting? No, and in fact, MAT did subcontract for the Twin Ports outpatient clinic, one of the clinics that it serviced. So it could have subcontracted. But again, those services were not part of the contract, so there would have been nothing for the VA to base its requirements on. For these reasons and for the reasons outlined in our brief, we would respectfully request that this Court affirm the Board's decision. Thank you, Ms. Hogan. Mr. Lucas. Just one point in rebuttal, Your Honors, and that is the wording of the contract provision, the first one that we're relying on, is that all handicapped transportation service requests will be offered to contractors. That suggests to me, and I hope it suggests to this Court, that any lack of specifications in the contract regarding litter vans or taxicab transportation, any lack of pricing information, that sort of thing, could be included in the offer. I think the contract certainly anticipated that the primary mode of transportation would be wheelchair vans, and so all the specifications of pricing were included, but that in the event that another form of transportation was needed by the Department, they could provide the specifications at that time. But doesn't the contract on the face of it suggest that there are other modes of transportation by referring to primarily by wheelchair? Absolutely. So the contract itself contemplated other modes of transportation. In fact, that is our case, that that is what the contract was meant to provide, for other forms of transportation to be offered to the contractor, and I'm just saying that the specifications of pricing could be included in the offer at the time it was made. Any more questions for Mr. Lucas? Thank you, Mr. Lucas. Ms. Hogan, the case is taken under submission.